J-A13034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DUWAYNE DIXON, | |
| Appellant | No. 1052 WDA 2015 |

Appeal from the Judgment of Sentence of June 3, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016492-2008

BEFORE: OLSON, STABILE and MUSMANNO, JJ.

CONCURRING MEMORANDUM BY OLSON, J.: **FILED AUGUST 16, 2016**

I agree with my learned colleagues in the Majority that the trial court's use of a racial epithet warrants a remand of this case for resentencing. However, as the trial court will again be imposing a sentence on Appellant, I think it is important to address another issue raised by Appellant in the hopes of giving additional guidance to the trial court at the time of Appellant's second resentencing hearing. Specifically, Appellant argues that, at the time of his first resentence, the trial court improperly focused upon retribution and refused to consider how Appellant rehabilitated himself since the initial sentencing. After reviewing the transcript of the June 3, 2015 sentencing hearing, it is clear to me that the trial court had no tolerance for even considering how Appellant may have changed since he was incarcerated. As a defendant's rehabilitative needs is a factor that must be

considered by the sentencing court pursuant to 42 Pa.C.S.A. § 9721, I believe that the trial court erred in failing to address this factor. More importantly, I believe that the trial court's apparent disinterest in improvements made by Appellant in the eight years since the crime occurred, and the trial court's statements during the June 2015 sentencing hearing, reflect bias on the part of the trial court.

As noted by the learned Majority,

> [t]he sentencing decision is of paramount importance in our criminal justice system, and must be adjudicated by a fair and unbiased judge. This means, a jurist who assess[es] the case in an impartial manner, free of personal bias or interest in the outcome. Because of the tremendous discretion a judge has when sentencing, a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned. A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings.

*Commonwealth v. Williams*, 69 A.3d 735, 744 (Pa. Super. 2013) (internal quotation marks and citations omitted). I believe that the trial court's expressed disinclination to even hear about Appellant's efforts to better himself, coupled with the court's preconceived determination that Appellant had not changed, more than demonstrated an appearance of prejudice and rendered the sentencing proceeding unfair.

At the outset of the resentencing hearing, counsel for Appellant informed the trial court that "[Appellant] has changed a lot since he initially was convicted of this crime. It happened when he was 18 years old. He's

now 26, he's no longer a teenager and starting to make – according to his family – he's starting to make the right choices." N.T., 6/3/15, at 3. Counsel indicated that some of Appellant's family members were present and wanted to address the court. *Id.* Counsel then called Jermaine Carter, Appellant's uncle, to testify. However, before Mr. Carter was even sworn in, the trial court made the following statement on the record: "The one thing I like to do is, so that we're starting from bedrock, is to give the facts about why we are here." *Id.* at 4-5. The court then outlined the facts of the case, the significant injuries by the victim, and Appellant's decision to follow the instructions of his gang's leader to shoot the victim. The trial court concluded by stating, "[s]o I want everyone to start from bedrock as to where we are so this little guy here[1], 'Bear'[2] doesn't look like he's being victimized. Let's get to reality. Now tell me what you want to tell me." *Id.* at 6. Thus, even before Mr. Carter addressed the court and discussed any improvements Appellant made over the years, the trial court clearly intimated that it had no interest in hearing about Appellant's rehabilitative needs and, instead, was focused upon the crime.

As soon as Mr. Carter began to speak, he was interrupted by the trial court. Specifically, the following exchange occurred:

_____

[1] The trial court made several remarks about Appellant's small stature during the hearing. N.T., 6/3/15, at 6, 10, 13.

[2] "Bear" is Appellant's nickname.

MR. CARTER: Thank you. I would like to say that [Appellant] was raised with good morals and good values from a caring, a loving family. And yes, he probably went through challenging moments in his life, but the young man you see here today is not the same young man that went through the system.

THE COURT: -- he's the same guy. He's the same guy. He's not a different guy, he's the same guy. Now he may behave a little differently now that he's been locked up for six or eight years but he's the same guy. He may behave differently, look differently but he's the same guy so let's not play games. It's not like we're switching people, he's the same guy. Let's not play games about reality. He is the same guy, now tell me what you want to tell me.

*Id.* at 7. Again, Mr. Carter attempted to discuss how Appellant took steps to improve himself since the crime and his incarceration and acknowledged that, at the age of 18, Appellant made bad choices. Throughout Mr. Carter's testimony, the trial court admonished the witness by recounting the serious nature of the crime and concluding that Appellant was "the same guy". *Id.* at 8-11. Even though the trial court told Mr. Carter "tell me what you want to tell me", the trial court unceremoniously ended Mr. Carter's limited testimony by stating "Let's move on, I got your point." *Id.* at 11.[3]

The trial court's lack of interest in Appellant's rehabilitation continued. When it was time for Appellant to speak, the trial court seemed to indicate a

---

[3] After Mr. Carter testified, counsel for Appellant stated that Appellant's mother and sister wanted to give statements. N.T., 6/3/15, at 11. They gave no verbal statements, however, and the record does not establish the reason for the lack of statements. It is possible that written statements were provided but, if so, the court did not reference them at the time it imposed sentence or in its 1925(a) opinion.

willingness to hear from the Appellant as to any improvements he made over the years. Specifically, the following transpired:

> THE COURT: All right, what do you want to tell me, [Appellant]?
>
> APPELLANT: If I can please –
>
> THE COURT: -- it's all yours. You take as much time as you want. You can tell me whatever you choose to tell me because I'm curious because I do want to know what the trajectory of your life is at this point. I'm interested in how you see things, how do you understand how this happened. Those are the kind of things that would make me think. It's all yours.

*Id.* at 12. Yet, before Appellant could even get a few sentences out, the trial court interrupted him and chastised him about the severity of the crime and the serious injuries suffered by the victim. Appellant again tried to express remorse for his actions and discuss how he has changed, but the trial court had no patience. Although told he could take as much time as he wanted to tell the court whatever he chose, Appellant's statement was cut short and sentence was imposed. *Id.* at 17. The trial court ended the hearing with the following statement:

> I am always open to listening if there's change, a real change. I'm always going to be thinking about [the victim], too. He's always going to be on my shoulder, blind, brain damaged and traumatized by you and your buddies. Let's move on.

*Id.* at 19.

In my view, the transcript of the resentencing hearing establishes that, although the trial court stated its willingness to hear about Appellant's change and consider his rehabilitative needs, the trial court came into the

hearing with the preconceived notion that Appellant could not be rehabilitated. The court had little tolerance for considering anything other than the heinous crime committed and the serious injuries suffered by the victim.[4] I share the trial court's views with respect to the serious and senseless nature of Appellant's crime, including the permanent and life-altering injuries inflicted upon the victim. I do not take any of this lightly and I truly understand how Appellant's actions appalled the trial court and why it properly considered the gravity of the offense as it relates to the impact on the life of the victim, one of the other sentencing factors to consider under 42 Pa.C.S.A. § 9721. However, that does not permit the trial court to ignore other statutory factors and to show disdain for Appellant and his witnesses. As Judge Shoyer wrote in his concurring opinion in **Commonwealth v. Spencer**, 496 A.2d 1156, 1166 (Pa. Super. 1985), "[t]he sentencing judge should appear as the fountainhead of justice, not the spirit of revenge." (Shoyer, J., concurring). Judicial proceedings must be governed by law, not passion.

_____

[4] The trial court's 1925(a) opinion makes it clear that the seriousness of the crime was at the forefront of the court's mind at the time of the resentencing hearing. "The [c]ourt's dialogue with counsel, the defense witness and [Appellant] showed the [c]ourt considered the impact this crime had on a young man who was working two jobs and rewarded himself with a shiny watch. The victim's injuries and the long term consequences of his interaction with [Appellant] were on the [c]ourt's mind at sentencing. As for rehabilitation, it was not that big of a factor." Trial Court Opinion, 10/5/15, at 3.

Judge Stabile and Judge Musmanno join this concurring memorandum.